*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1522**

State of Minnesota,
Respondent,

vs.

Dionte Gosa,
Appellant.

**Filed August 1, 2016
Affirmed
Smith, John, Judge**[*]

Hennepin County District Court
File No. 27-CR-14-1203

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge, Worke, Judge, and Smith, John, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH, JOHN,** Judge

We affirm appellant's judgment of conviction of third-degree criminal sexual conduct, because the district court (1) did not abuse its discretion by excluding evidence regarding alcohol-induced blackouts; (2) did not plainly err when it excluded a hearsay statement by the victim; and (3) did not abuse its discretion by denying appellant's motion for a downward dispositional departure.

## FACTS

On December 21, 2013, B.P., her twin sister, and other friends attended a party at a friend's home in Minneapolis. They arrived around 9:00 or 10:00 p.m. B.P. consumed alcohol and became intoxicated. Around 11:00 or 11:30 p.m., B.P. went upstairs. B.P.'s twin sister and another friend followed B.P. upstairs to make sure she was okay. B.P. laid down on a couch in an upstairs room. Appellant Dionte Gosa was in the room watching a movie. B.P. and her twin sister had met appellant once before at a party at the same house. B.P.'s twin sister told appellant that B.P. wanted to lie down, and asked appellant if she could trust him to be in there with B.P. Appellant indicated that he could be trusted.

According to appellant, after the twin sister and her friend left, B.P. began "grind[ing] her body on [him,]" and they proceeded to have consensual sexual intercourse.

According to B.P., she was passed out and woke up facing the couch cushions with her pants pulled down to her knees. Appellant was behind her and she felt his penis in her vagina. She told appellant to stop four times, which he did only after she told him she needed to throw up. She ran to the bathroom and appellant followed her, but she asked

him to leave and get her sister. While in the bathroom, B.P. repeatedly told her friends and her twin sister that appellant raped her. B.P.'s twin sister then asked appellant if he touched B.P. or slept with B.P. Appellant initially said he did not, but then said "she wanted it."

B.P. left the party with her twin sister and a friend and stayed at the friend's home for the remainder of the night. The next day B.P. went to the hospital and was examined by a nurse who took samples for a rape kit. B.P. reported feeling sore, and the nurse found a tear in her vagina consistent with blunt force trauma while B.P. was lying on her side when penetration occurred. Semen on a cervical swab contained DNA consistent with a DNA sample provided by appellant.

Based on those events, appellant was charged with one count of third-degree criminal sexual conduct, in violation of Minn. Stat. § 609.344, subd. 1(d). Appellant was found guilty as charged by a jury. Appellant was sentenced to a presumptive sentence of 48 months in prison plus 10 years of conditional release.

## DECISION

### I.

Under the due process clauses of the Fourteenth Amendment of the United States Constitution and Article I, section 7 of the Minnesota Constitution "every criminal defendant has the right to be treated with fundamental fairness and 'afforded a meaningful opportunity to present a complete defense.'" *State v. Richards*, 495 N.W.2d 187, 191 (Minn. 1992) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532, (1984)). "Although the right to present witnesses is constitutionally protected, the accused 'must comply with established rules of procedure and evidence designed to assure both

3

fairness and reliability in the ascertainment of guilt and innocence.'" *Id.* at 195 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973)). "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citations omitted).

*Exclusion of "lay" testimony about alcohol-induced blackouts*

Appellant argues the district court abused its discretion by excluding testimony by a lay person about alcohol-induced blackouts, and he was prejudiced because he was denied the opportunity to present a complete defense.

Before the start of trial, appellant sought to introduce general testimony about alcohol-induced blackouts from a person who had no knowledge of the facts of the case. He argued he should be permitted under Minnesota Rule of Evidence 701 to admit testimony of a lay person about his experiences with alcohol-induced blackouts. Appellant argued that under rule 701

> [A] person who has direct experience with their own history of alcohol use and abuse and blackout can testify about what a blackout is like, here's what happens . . . when I blackout. Here's . . . what the experience is like for me. Certainly he can be cross-examined on that. He obviously isn't going to say anything about the complaining witness in this case, doesn't know anything about it, doesn't know anything about the case but I think his experiences are based on his perception and relevant to a fact at issue and so I think we have to be allowed to . . . have a lay witness testify about that.

The court noted that evidence about alcohol-induced blackouts was relevant to the case and that appellant would be allowed to question the victim about alcohol-induced blackouts and would be allowed to question the nurse who examined B.P. about her general knowledge related to alcohol-induced blackouts. The court also indicated it may entertain admitting testimony from an expert about alcohol-induced blackouts. The court allowed for an afternoon recess to provide appellant an opportunity to locate an expert. However, the court indicated it would not allow "a lay person to testify about their knowledge or experience with the use of alcohol or controlled substances." The court reasoned that

> Rule 701 applies to lay witnesses that have relevant information about a particular case, given their opinion, given their observations . . . of something relevant in the case. . . . [T]he rule does not allow for just hypotheticals by lay witnesses. It basically allows a lay person to describe objective observations to what he or she saw in a particular moment related and relevant to the case at hand and that's not what we have here. Therefore for that reason I'm not going to allow a lay person without specific knowledge of the case or circumstances of the case to testify as to blackouts or the use of alcohol.

A district court possesses "wide latitude" to impose "reasonable limits" on evidence. *State v. Lanz-Terry*, 535 N.W.2d 635, 639 (Minn. 1995). A district court has discretion to exclude marginally relevant evidence. *Id.*

The proposed testimony was only of marginal relevance to a jury in this case because an unrelated lay person's experience with alcohol-induced blackouts is only minimally likely to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Minn. R. Evid. 401. Further, the rule of evidence on which appellant's argument rests, Minnesota Rule of Evidence 701,

5

is a rule which limits the admissibility of evidence, not a rule which mandates the admissibility of evidence. Opinion testimony by a lay witness is limited to opinions which are (1) "rationally based on the perception of the witness and" (2) "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Minn. R. Evid. 701. "The rule permits testimony by means of opinion . . . when it is based on firsthand knowledge" and "specific application [of the rule is left] to the discretion of the trial court." *Id.* committee cmt. Appellant sought to introduce the testimony of an unspecified witness with no firsthand knowledge of B.P.'s alcohol-induced blackout on the night of the assault. The proposed testimony does not meet the requirements of rule 701 because the witness would not offer an opinion based on his or her own perception that would be helpful to a clear understanding of the determination of a fact in issue.

The district court did not abuse its discretion when it excluded the testimony of an unspecified lay person with no connection to the case about his experience with alcohol-induced blackouts. Further, appellant was allowed to cross-examine B.P. about her alcohol-induced blackout on the night in question, and as such, appellant was not deprived of the right to present a complete defense.

*Habit Evidence*

Appellant also argues he was denied the opportunity to present a complete defense when the district court excluded evidence related to other occasions where B.P. drank alcohol and blacked out.

On cross-examination, B.P. was questioned about her level of intoxication on the night of the assault and then was asked "[a]t other parties where you have drunk before,

6

you also have had periods of black out?" The state objected on the grounds that it was an "improper question" and the objection was sustained. Later, out of the presence of the jury, appellant indicated he understood the state's objection to be on the basis that the question sought to elicit impermissible character evidence. After hearing arguments, the district court sustained its ruling.

Later, appellant argued that the question was admissible as habit evidence under Minnesota Rule of Evidence 406. Appellant indicated that he intended to elicit testimony from B.P. that "when I party, I drink. When I drink, I drink too much. When I drink too much I black out." The state responded that "the threshold that needs to be met in terms of bringing [habit] evidence forward" had not been met. The district court again sustained its ruling.

Habit evidence is "relevant to prove that . . . conduct . . . on a particular occasion was in conformity with the habit. . . ." Minn. R. Evid. 406. "Evidence of a habit or routine practice is relevant because it describes 'one's regular response to a repeated specific situation.'" *Ture v. State*, 681 N.W.2d 9, 17 (Minn. 2004) (quoting Minn. R. Evid. 406 advisory committee cmt. 1989).

Applying rule 406 to this case, evidence that B.P. had a habit of blacking out while drinking would be admissible to prove that on the night of the assault when B.P. drank she conformed with her habit of blacking out. B.P. acknowledged that she drank alcohol and that there were parts of the night she did not remember and that the night "was all a blur." To the extent that habit evidence was admissible to show that B.P. acted in conformity with her habit of drinking to the point of blacking out, it is cumulative because B.P.

7

acknowledged that she was blacked out from drinking when the assault occurred. *See State v. Poole*, 499 N.W.2d 31, 36 (Minn. 1993) (finding no abuse of discretion where trial court excluded cumulative habit evidence). The state argues B.P.'s "habit" of blacking out is irrelevant and unduly prejudicial in nature. Evidence of B.P.'s prior blackouts was only of marginal relevance to the case because B.P. acknowledged she was blacked out on the night in question. At trial the state raised a concern that admission of the evidence was likely to "besmirch" B.P. *See State v. Carpenter*, 459 N.W.2d 121, 125 (Minn. 1990) (discussing the concern of "besmirching" the character of a rape victim). The district court did not abuse its discretion when it excluded evidence of B.P.'s prior blackouts. Further, appellant was allowed to cross-examine B.P. about the relevant blackout, her blackout on the night in question. As such, appellant was not denied his right to present a complete defense.

**II.**

Appellant argues the district court plainly erred when it sustained the state's objection to appellant's attempt to elicit testimony from a witness regarding a statement made by the victim on the way to the party. At trial, after the jury had started to deliberate, defense counsel made the following record:

> During the testimony of [R.G.], I attempted to ask him about a statement that [B.P.] made in the car on the way to the party, and I made an offer of proof off the record that what he would say is that she would say that she said on the way to the party, "I'm going to [f***] with Dionte tonight."[1] And the State

---

[1] Defense counsel asked R.G. "What were people saying about the party?" The state objected on the grounds that it was hearsay and after an off-the-record conversation the district court sustained the objection.

objected to that to elicitation of that, and the Court sustained the objection. I don't think it's hearsay because it's not offered for the truth of it.

Appellant does not argue that the proposed testimony was not hearsay. Instead, appellant argues it was hearsay admissible under the catchall exception, Minnesota Rule of Evidence 807, and the district court erred when it excluded the statement. Appellant did not raise this theory of admissibility before the district court, and therefore we review for plain error. *See* Minn. R. Evid 103 committee cmt. 1989 (noting "the existing practice of requiring not only a timely objection, but a specific objection unless the context of the question makes the grounds for objection obvious"); *see also State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006) (noting because of the "complexity and subtlety of the operation of the hearsay rule and its exceptions," objections are particularly critical to give a party an "opportunity to establish that some or all of the statements were admissible under one of the numerous exceptions to the hearsay rule"). "[U]nder the plain-error doctrine, we may consider the evidentiary issues if there is (1) error, (2) that is plain, and (3) that affects the defendant's substantial rights." *State v. Hollins*, 765 N.W.2d 125, 131 (Minn. App. 2009). "The party asserting plain error has the burden of establishing all three elements." *Id.* An error is plain if it is "clear and obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010).

Hearsay is an out-of-court statement offered as evidence to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Generally, hearsay is inadmissible unless it fits under one of a number of exceptions, which generally reflect the recognized reliability of

9

statements made in certain situations. Minn. R. Evid. 802 (barring admission of hearsay). Rule 807 provides that a statement not specifically covered by the other exceptions to the hearsay rule that has "equivalent circumstantial guarantees of trustworthiness" is admissible if the court determines that (1) "the statement is offered as evidence of a material fact"; (2) "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts"; and (3) "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Minn. R. Evid. 807. However, a statement may not be admitted unless "the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing, to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it." *Id.*

Appellant argues "the ruling was in error because [Rule 807] permitted the introduction to the statement," and "a review of the pertinent factors . . . reveals that the proffered statement should have been admitted." However, even if appellant was able to demonstrate that the statement had the requisite circumstantial guarantees of trustworthiness, appellant did not comply with the notice requirement of rule 807. Under rule 807 "a statement may not be admitted . . . unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing." A review of the record reveals appellant never attempted to admit the statement under the rule.

Moreover, appellant has not met his burden in demonstrating that any error was plain. Appellant argues the error was plain because "[i]t is well-settled that a hearsay

10

statement that meets Rule 807's requirements may be admitted." However, even though it is well-settled that statements *may* be admitted under rule 807 if they meet certain requirements, appellant does not cite, nor are we aware of, any support for the proposition that a hearsay statement *must* be admitted under rule 807. Appellant has not met his burden in proving the district court plainly erred in excluding B.P.'s statements under the catch-all hearsay exception.

## III.

Appellant argues the district court abused its discretion by denying his motion for a downward dispositional departure where substantial and compelling circumstances existed warranting a departure. Appellant was sentenced to 48 months in prison, the presumptive sentence for criminal sexual conduct in the third degree in violation of Minn. Stat. § 609.344, subd. 1(d), for an offender with no criminal history points. Minn. Sent. Guidelines 4.B (2014). "This court will not generally review a district court's exercise of its discretion to sentence a defendant when the sentence imposed is within the presumptive guidelines range." *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010).

"A sentencing court 'must pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling circumstances' that distinguish a case and overcome the presumption in favor of the guidelines sentence." *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) (quoting Minn. Sent. Guidelines 2.D.1). Appellant does not provide authority to support the proposition that it is an abuse of discretion *not* to depart from the guidelines. To the contrary, "a sentencing court can exercise its discretion to depart from the guidelines *only if* aggravating or mitigating circumstances are present, and

11

those circumstances provide a substantial and compelling reason not to impose a guidelines sentence." *Id.* (quotations omitted).

Although a court *may* depart from the guidelines when substantial and compelling circumstances are present, *State v. Garcia*, 302 N.W.2d 643, 657 (Minn. 1981), "it would be a rare case which would warrant reversal of the refusal to depart." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981) (concluding in a case where the district court did not depart where there were arguments for departure "the determination whether or not to depart was clearly a discretionary decision"). A review of the record in the present case reveals the district court carefully reviewed all of the submissions of the parties related to the sentencing decision, "thought long and hard" about the decision and "[didn't] see a reason to give [appellant] the extraordinary remedy that is a departure." Appellate courts are "loath to interfere" with a district court's imposition of the presumptive sentence. *State v. Law*, 620 N.W.2d 562, 564-65 (Minn. App. 2000), *review denied* (Minn. Dec. 20, 2000). *See also State v. Back*, 341 N.W.2d 273, 275 (Minn. 1983). The district court did not abuse its discretion in its sentencing decision.

**Affirmed.**